## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LEE ANN MCKAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 21 C 00577 |
| | ) | |
| CITY OF CHICAGO, | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendant. | ) | |
| | ) | |

### MEMORANDUM OPINION AND ORDER

Pro se Plaintiff Lee Ann McKay has been employed by the Chicago Fire Department ("CFD") since 1999; the court understands she is now on leave. She filed this lawsuit in 2021, bringing a host of statutory and tort claims against the CFD managers and various CFD officials. Underlying the dispute are three charges McKay filed against the CFD with the Equal Employment Opportunity Commission ("EEOC") in 2016 and 2017.

The court has addressed several amended complaints filed by McKay since the inception of this case. Most recently, then-District Judge Maldonado issued a lengthy opinion [89] dismissing, mostly without prejudice, all of the claims asserted in McKay's Second Amended Complaint [60] except for a claim of retaliation in violation of Title VII against the City of Chicago. McKay has now filed a Third Amended Complaint [101] as against the City only, alleging sex discrimination (Count I), retaliation (Counts II and VI), and failure to promote on the basis of race or national origin (Count III) under Title VII; violation of her Fourth and Fourteenth Amendment rights under § 1983 (Counts IV and V), intentional infliction of emotional distress (Count VII), and invasion of privacy/intrusion upon seclusion (Count VIII). The City again moves to dismiss, challenging all claims other than the retaliation claim that survived the City's earlier motion. For the reasons explained here, the City's motion [105] is granted in part and denied in part. McKay's Fourth and Fourteenth Amendment claims against the City are dismissed with prejudice. Her

claims of sex discrimination, race discrimination, intentional infliction of emotional distress, and intrusion upon seclusion survive this motion.

## BACKGROUND

McKay has been a CFD firefighter since 1999. (Third Amended Compl. ("TAC") [101] at 4.) Her case stems from three charges she filed against the CFD with the Equal Employment Opportunity Commission ("EEOC"): one on February 29, 2016, alleging sex discrimination; a second on February 13, 2017, alleging retaliation for having filed her February 2016 complaint; and a third on July 5, 2017, alleging race discrimination. *See McKay v. City of Chicago*, No. 21 C 00577, 2024 WL 3251349, at *2 (N.D. Ill. July 1, 2024). On this motion, the court presumes the truth of all well-pleaded allegations in McKay's Third Amended Complaint. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1078 (7th Cir. 2008).

In her 2016 EEOC charges of sex discrimination, McKay averred that

[m]any firehouses do not have separate Facilities for men and women, and at others, the Facilities for women are unequal or not equally accessible to those available to the men. The disparities in the facilities also discourage other women from applying to work as City of Chicago firefighters and paramedics.

(Second Amended Compl. (hereinafter "SAC") at [60] at 115; *McKay*, 2024 WL 3251349, at *2.) She also described being subjected to "sex-based harassment," though she did not describe the harassment in detail in the charges. (SAC at 116.) McKay's Third Amended Complaint expands on those allegations.

In support of her claims of sex discrimination, McKay has alleged that two of her supervisors ordered her to "not make any decisions on her own," unlike her male colleagues, and that at two firehouses she was assigned to, female employees including McKay were assigned "to do medial [sic] reports and cleaning which was not required of" their male counterparts. (TAC at 17.) For the most part, however, Plaintiff's sex discrimination allegations concern the inadequacy of or lack of access to facilities at various CFD firehouses where McKay was assigned to work during her 25-year career, and the related conduct of her supervisors and colleagues.

2

McKay does not say precisely when she experienced these conditions, though some of her descriptions contain clues as to the relevant time periods. She does identify many of the specific firehouses where she encountered these problems by reference to the numbered CFD engine companies that were home to these firehouses.

As McKay explains, CFD firefighters are assigned to 24-hour work shifts. (TAC at 8 n.5.) Consequently, in addition to a "public" bathroom consisting of a toilet and sink, CFD firehouses have "living quarters" for their firefighters, consisting of bathrooms with showers, locker rooms, and sleeping areas. (*Id.* at 8 n.4.) At the time McKay filed EEOC charges against the CFD alleging sex discrimination, however, the fire department had women's-only facilities in fewer than 10% of its firehouses. (*Id.* at 7 n.3.) Moreover, even after such facilities were installed, many "lacked basic necessary amenities" —such as garbage cans and speakers or bells to hear when the fire company was being dispatched—or were equipped with amenities inferior to those in the men's quarters: smaller lockers and "water saver/low flow shower heads" instead of "regular flow" shower heads, for example. (*Id.* at 13.) Many of McKay's allegations, however, concern more specific, and more glaring, instances of unequal and humiliating treatment relating to the facilities at CFD firehouses. The court describes several notable examples below, though the description is not exhaustive of McKay's allegations in this regard.

While stationed at the firehouse associated with Engine 72, McKay recounts that she was told (it is not clear by whom) that she could use only the firehouse's public bathroom and could not use it to have bowel movements at all. (*Id.* at 8.) She was also told that if she wanted to use the shower facilities at that firehouse, she "needed to ask permission of every member on duty" to do so. (*Id.*) McKay's male co-workers were not subjected to these restrictions. (*Id.*)

During her stint at the Engine 81 firehouse, McKay learned that the City was in the process of renovating the building to include a women's bathroom and locker room. (*Id.*) But according

to McKay, a CFD District Chief by the name of Bates[1] "stopped this from occurring" (she does not say how) and instead turned the space that had been set aside for the project "into a weight room." (*Id.*)  The existing locker room and bathroom had "no access to privacy for use of the facilities"; consequently, McKay only used the public bathroom at the firehouse for Engine 81; she further describes being "unable to shower after a fire to remove any carcinogens, a benefit her male co-workers were able to partake in."  (*Id.* at 8–9.)

The firehouse associated with Engine 121 included a "new house built with women's facilities in the back corner of the firehouse."  (*Id.* at 9.)  But to reach these facilities, female firefighters including McKay had to navigate through a "pitch-dark bunk room," whereas the locker room and bathroom for male firefighters were easily accessible off a "main hallway" in the firehouse.  (*Id.*)  McKay further alleges that the women's facilities at Engine 121 were connected to the men's facilities by a door, and that the male firefighters frequently used the women's facilities, including when female firefighters were inside.  (*Id.*)  McKay requested that a lock be placed on the connecting door to stop such access, but her request was "met with laughter and a denial" by unnamed colleagues.  (*Id.*)

While McKay was detailed to Engine 4, it appears that the firehouse where that Engine is located did not have dedicated women's facilities, as she alleges that "there was no way to create some privacy to use the facilities."  (*Id.* at 10.)  McKay alleges that the firehouse's public bathroom was "disgusting."  (*Id.* at 9.)  For this reason, at some point in time the "Engine Officer" (which the court understands to mean the highest ranking officer assigned to the firehouse) would "share his bathroom with the women" so that they "had access to a women's bunkroom/locker room and a

---

[1]     A man named Ronald Bates—who later brought his own discrimination lawsuit against the City—was a District Chief at CFD from 2000 to 2004.  *See Bates v. City of Chicago*, 726 F.3d 951, 953 (7th Cir. 2013).  The court is not certain whether the District Chief Bates that McKay refers to is the same person.

shared bathroom, with door locks." (*Id.*)  At some later point, however, Captain Rodney Herring[2] was assigned to this location and decided that he did not want to share his bathroom; he then "barricaded access to the bathroom and turned the bunkroom/locker room into storage."  (*Id.* at 10.)  McKay complained of this conduct to then-Chicago Fire Commissioner Jose Santiago[3]; Santiago's purported response was "Lee Ann, it is the Captain's house, he can do what he wants." (*Id.*)  Eventually, the City installed a women's bathroom at Engine 4, only for Herring to turn it into a "single use bathroom for anyone in the house to use," while the pre-existing men's bathroom remained restricted to access by men.  (*Id.*)

As described above, McKay's complaint is not limited to allegations regarding the facilities at CFD firehouses.  McKay also alleges, as she did in her Second Amended Complaint and her February 2017 EEOC charges, that she was passed over for promotion on the basis of her race (white).  (TAC at 22.)  In this regard, McKay alleges that she took and passed the CFD exam for promotion to the rank of Lieutenant in 2009.  (*Id.* at 22–23.)  As McKay explains, passing the Lieutenant exam lands candidates on a numbered list, from which promotions are generally awarded in numerical order.  (*Id.*)  McKay also appears to suggest that, among passing candidates, those with higher scores will generally receive higher placement on the list.  (*See id.* at 23.)  After passing the Lieutenant exam, McKay was placed on the promotion list at number 406 out of 1476.  (*Id.* at 22.)

Although she makes no mention of it in the operative complaint, McKay's EEOC charges and Second Amended Complaint confirm that she was eventually promoted to Lieutenant in 2017.

---

[2]  Contemporary reporting by Chicago's ABC7 television station suggests Herring was promoted to Captain in 2011 after 21 years as a CFD firefighter.  *Married Chicago Firefighters Make History*, ABC7 (Nov. 15, 2011), https://abc7chicago.com/archive/8431435/.

[3]  Santiago was Chicago Fire Commissioner from 2012 to 2018.  *See* Press Release, CITY OF CHICAGO OFF. OF THE MAYOR, *Mayor Emanuel Appoints New Fire Commissioner: Robert Hoff Retires; Deputy Fire Commissioner Jose Santiago is Appointed* (Feb. 16, 2012), https://www.chicago.gov/city/en/depts/mayor/press_room/press_releases/2012/february_2012/mayor_emanuel_appointsnewfirecommissioner.html; *New Fire Commissioner Announced*, ABC7 (Sept. 21, 2018), https://abc7chicago.com/post/new-fire-commissioner-announced/4305770/.

*See McKay*, 2024 WL 3251349, at *2; SAC at 121.  It is unclear how quickly McKay might have expected to be promoted in the normal course, but she alleges that between 2009 and 2017, 39 CFD firefighters who identified as Black or Hispanic and had lower placement than McKay on the promotion list were elevated to Lieutenant ahead of McKay.  (TAC at 23.)  These Black and Hispanic firefighters were consequently eligible later to take the test for a promotion to the rank of Captain sooner than McKay.  (*Id.*)

Finally, as described above, McKay also alleges she was subjected to retaliation, including a procedurally improper drug test, for filing EEOC charges regarding sex discrimination.  The court need not re-examine those allegations in detail here, as it has already determined that McKay has stated a claim for retaliation under Title VII.  *See McKay*, 2024 WL 3251349, at *2–3, 6–7.  The court notes only that, as in her Second Amended Complaint, McKay fails to allege any widespread practice of unlawful drug testing implemented by the CFD.  She simply alleges that she, personally, was on one occasion "drug-tested for swearing in the firehouse" and, on another, drug tested because she requested a medical leave ("lay up") on account of stress.  (TAC at 15, 17.)

## DISCUSSION

### I.    Sex Discrimination (Count I)

Judge Maldonado previously dismissed McKay's sex discrimination claim without prejudice, noting that McKay had not alleged discriminatory practices at firehouses where she herself worked, nor provided details as to treatment she personally received because of her sex. *McKay*, 2024 WL 3251349, at *5–*6.  McKay's Third Amended Complaint rectifies that issue.  As explained in more detail below, the court finds that McKay's amended allegations regarding unequal access to facilities, and related conduct by her male colleagues and supervisors, are sufficient to support a claim of sex discrimination on account of a hostile work environment.

To state a Title VII hostile work environment claim, a plaintiff must plausibly allege (1) she was subject to unwelcome harassment; (2) the harassment was based on a protected

characteristic; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is basis for employer liability. *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 833–34 (7th Cir. 2015). Although Title VII was not designed to be a "general civility code," a workplace need not be "hellish" to qualify as hostile within the meaning of the statute. *Alamo v. Bliss*, 864 F.3d 541, 550 (7th Cir. 2017) (citations omitted). Further, an employee alleging a hostile work environment need not allege any single act that would be actionable on its own. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). Many acts may accumulate to support a hostile work environment claim, *id.*, and courts consider the totality of the circumstances in determining whether a workplace is objectively hostile. *Alamo*, 864 F.3d at 549. Finally, employer liability for a hostile work environment can attach if the harasser is a supervisor or, where the harasser is a co-employee of the plaintiff, if the employer has been negligent either in discovering or remedying the harassment. *Paschall v. Tube Processing Corp.*, 28 F.4th 805, 813 (7th Cir. 2022) (citations omitted).

The court acknowledges that McKay did not label the allegations of sex discrimination in her Third Amended Complaint using the term "hostile environment." No matter. In a complaint, a plaintiff need not "plead law or match facts to elements of legal theories"; what matters is whether the facts alleged identify a plausible claim. *Deslandes v. McDonald's USA, LLC*, 81 F.4th 699, 705 (7th Cir. 2023), *cert. denied*, 144 S. Ct. 1057 (2024). Pro se plaintiffs, in particular, are entitled to liberal constructions of their complaints. *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013) (citations omitted).

McKay also did not use the term "hostile environment" in her 2016 EEOC charges alleging sex discrimination; but that does not preclude her from adequately pleading such a claim in her complaint. McKay's Title VII claim may proceed in court so long as her allegations are "like or reasonably related to" the allegations of her EEOC charge, meaning that there is a "reasonable relationship" between the two, and the "claim in the complaint can reasonably be expected to

grow out of an EEOC investigation of the allegations in the charge." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (citation omitted). In making this determination, courts construe EEOC charges liberally where, as here, the claimant was not represented by a lawyer. *Id.* at 1005 n.3 (citations omitted).

In her 2016 EEOC charges, McKay complained of "different conditions of employment," "unequal or not equally accessible" facilities at CFD firehouses, and "sex-based harassment." (SAC at 115–16.) The allegations in her Third Amended Complaint are much more detailed, but in this court's view, the link between the two is clear. All that would have been required for McKay's pleadings to "grow out of" an EEOC investigation is for the investigator to ask McKay to describe the inadequate facilities, specify *which* firehouses she experienced them at, and explain what she meant by "sex-based harassment."

In moving to dismiss McKay's sex discrimination claim, the City argues that it is partially time-barred and that the allegations are, in any event, insufficient to state a claim on the merits. As explained below, the court disagrees and denies the City's motion to dismiss the claim on this basis.

### A.     Hostile work environment claim is not time-barred

Title VII requires that the complainant file a sex discrimination complaint within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). A defendant may invoke a plaintiff's failure to timely file a charge with the EEOC as an affirmative defense. *Chatman v. Bd. of Educ. of City of Chicago*, 5 F.4th 738, 744 (7th Cir. 2021) (citations omitted). Generally speaking, however, the proper way to seek a dismissal based on an affirmative defense is to answer the allegations and then move for judgment on the pleadings under Rule 12(c). *Burton v. Ghosh*, 961 F.3d 960, 964–65 (7th Cir. 2020) (citations omitted). A motion to dismiss for failure to state a claim based on an affirmative defense is proper only where "the availability of a defense is apparent in the plaintiff's complaint itself." *Id.* at 965 (citations omitted).

8

The City asks the court to "limit Plaintiff's claims of unequal facilities to 300 days" prior to her "February 29, 2016 charge of discrimination," rather than the 25-year span of McKay's CFD career. (Mem. [106] at 8.) In assessing this argument, the court notes that it is not plain from the face of the complaint which events described by McKay took place during the 300-day period and which did not. But more importantly, a discrimination claim will not be time-barred so long as (1) all acts which constitute the claim are part of the same unlawful employment practice and (2) at least one act falls within the time period. *Morgan*, 536 U.S. at 122. That is, "district courts may not splinter a single employment practice even if claims based on some of the underlying conduct would no longer be timely on their own." *Ford v. Marion Cnty. Sheriff's Off.*, 942 F.3d 839, 849 (7th Cir. 2019).

The City may, of course, explore whether all of the conduct McKay complains of (if it occurred) was truly part of one employment practice. In determining whether different episodes of unlawful conduct should be assessed separately, courts consider three factors: "a substantial passage of time without incident known to the employer, a change in the employee's supervisors, and an intervening remedial action by the employer." *Id.* at 854. But this fact-bound inquiry should be conducted at summary judgment. McKay's Title VII sex discrimination claim survives the time-bar, for now.

### B. McKay's allegations meet the threshold of severity to support a hostile work environment claim

The City also argues that none of the conduct McKay alleges amounts to adverse actions that could support a claim of sex discrimination. (Reply [122] at 2.) As described above, however, none of the individual acts underlying a claim of hostile work environment need be actionable on their own. *Morgan*, 536 U.S. at 115.

McKay alleges that, across various CFD firehouses where she worked, she and other women firefighters experienced persistent, unequal access to adequate, private bathrooms, showers, and locker rooms as compared to male firefighters. At one firehouse without dedicated

9

women's facilities, McKay was told she could not use the public bathroom without asking permission and could not use it for bowel movements at all. At another firehouse, McKay did not have access to a shower. In at least two instances, McKay alleges that male supervisors at CFD firehouses brazenly commandeered spaces that the City had specifically set aside for women's facilities, and put them to their own preferred uses, whether as a weight room or an additional bathroom for male firefighters to use.

This sort of treatment and lack of privacy would be humiliating in any workplace; but McKay alleges that access to such facilities is particularly important in her line of work, where firefighters spend 24-hour shifts at the firehouse, and adequate showers are more critical still because firefighters are sometimes exposed to hazardous substances in the field that must be cleaned off in these facilities. As the Seventh Circuit has explained, the "specific circumstances of the working environment" also bear on whether certain conduct creates a hostile environment. *Alamo*, 864 F.3d at 550 (citation omitted). At the pleading stage, McKay has done enough to create a reasonable inference that the firehouses she worked at were "so pervaded by discrimination that the terms and conditions of [her] employment [were] altered." *See id.* (citation omitted). McKay has stated a claim of sex discrimination under Title VII.

## II.    Intentional Infliction of Emotional Distress (IIED) (Count VII)

Based on the conduct alleged in her complaint, McKay also levels a state law IIED claim against the City. To state such a claim under Illinois law, a plaintiff must allege that (1) the defendant engaged in "extreme and outrageous conduct"; (2) the defendant intended to cause severe emotional distress, and (3) the conduct did, in fact, cause severe emotional distress. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 269, 798 N.E.2d 75, 80 (2003) (citations omitted).

Judge Maldonado previously dismissed McKay's IIED claim, reasoning that the allegations of McKay's Second Amended Complaint described difficulties nearer to "everyday job stresses" than to "extreme and outrageous" conduct, and that the Illinois courts generally decline to allow IIED claims to proceed under such circumstances. *McKay*, 2024 WL 3251349, at *12 (citations

omitted).  The allegations of McKay's Third Amended Complaint, however, paint a starker picture of her denial of access to adequate bathroom, shower, and locker room facilities at various CFD firehouses, and her colleagues and supervisors' conduct in relation to those denials.  As discussed above, the treatment that McKay now alleges she endured goes well beyond "everyday job stresses," and veers into the territory of humiliation that could be expected to alter working conditions.  Claims of hostile work environment and IIED are not necessarily co-extensive, but under these circumstances, the court believes that the same alleged conduct that gives rise to McKay's hostile work environment claim can support a claim of IIED.

As with McKay's sex discrimination claim, the City also raises the affirmative defense that McKay's claim of IIED is time-barred by the one-year statute of limitations for personal injury imposed by the Illinois Tort Immunity Act, 745 ILCS 10/8-101.  (*See* Mem. at 20.)  But just as a Title VII claim will not be time-barred if the latest instance of a continuing unlawful practice occurred within the limitations period, so too the "continuing violation" doctrine in Illinois tort law holds that the limitations period "does not begin to run until the date of the last injury or the date the tortious acts cease."  *Feltmeier*, 207 Ill. 2d at 278, 798 N.E.2d 75.  As discussed above, it is not clear from McKay's Third Amended Complaint on what date she last experienced conduct relating to the denial of facilities that might rise to the level of IIED.  That is a question of fact that the City may explore in discovery.  For now, McKay's IIED claim may proceed.

### III.    Title VII Retaliation (Counts II and VI)

As explained above, Judge Maldonado found that McKay's claim of retaliation under Title VII in her Second Amended Complaint could proceed past the pleading stage, based on her allegations that the following actions were taken against her in retaliation for filing EEOC charges: (1) she was blocked or denied the opportunity to work in certain battalions or at certain firehouses; (2) CFD failed to properly and timely pay her overtime compensation after CFD employees lost McKay's overtime forms; and (3) she was subjected to an improper drug test.  *McKay*, 2024 WL 3251349, at *6–7.  The City does not challenge that ruling but asks the court to clarify that

11

seventeen other acts that McKay claims were committed in retaliation *cannot* form the basis of a retaliation claim. (*See* Mem. at 10–14.)

The court declines this invitation. The City is correct that some of Plaintiff's claims may be time-barred if they arise from retaliatory acts that precede the relevant charge-filing period. At this stage, however, all that matters is that McKay has alleged *enough* factual content to state a claim for retaliation. That McKay may seek to present evidence of other acts which ultimately cannot support liability is an issue for summary judgment

## IV.    Failure to Promote on the Basis of Race or National Origin (Count III)

To state a claim of race discrimination, McKay need only allege that the employer instituted a specified adverse employment action against her, and that it was on the basis of race. *See Tamayo*, 526 F.3d at 1084; *see, e.g., E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 781 (7th Cir. 2007) (citing *Bennet v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998)) (plaintiff may state a race discrimination by alleging no more than "I was turned down for a job because of my race.") A failure to promote is a qualifying adverse employment action. *Volovsek v. Wisconsin Dep't of Agr., Trade & Consumer Prot.*, 344 F.3d 680, 688 (7th Cir. 2003) (citation omitted).

Judge Maldonado previously dismissed McKay's race-based failure to promote claim because (1) it appeared that the alleged, unlawfully-withheld promotion she complained of was a promotion to the rank of Captain but (2) McKay's own allegations established that, at the time, she had not yet been promoted to Lieutenant, which was a necessary intermediate step any candidate would have to reach to become eligible for promotion to Captain. *McKay*, 2024 WL 3251349, at *8. McKay has since clarified, however, that she alleges she was passed over for promotion to *Lieutenant* on account of her race. More specifically, she alleges that she was passed over in favor of 39 Black or Hispanic firefighters who were behind her on the promotion list and who had scored lower than her on the Lieutenant's exam. The fact that McKay missed out on, or was delayed in seeking, promotion to Captain is simply an outgrowth of the initial act of discrimination she complains of. McKay has stated a claim of race discrimination.

V.      **Fourth Amendment/ Drug Test and Conspiracy (Counts IV and V)**

As she did in her Second Amended Complaint, McKay alleges in Count IV that the City is liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) for subjecting her to improper drug tests.  In Count V, McKay asserts, without offering more detail, that the City "reached an agreement to deprive Plaintiff of her constitutionally protected rights."  (TAC at 48.)  As McKay's response to Defendants' motion makes clear, her allegation of a conspiracy involving the City rests on the notion that former Defendants Barry Garr, Caruso Lockett, Stephen Little, Michael Carbone, and Brian Helmhold "discussed and agreed" to have McKay "tested without following policy and procedures."  (Pl. Resp. [117] at 11.)

Judge Maldonado previously dismissed McKay's conspiracy claim against these individual Defendants with prejudice.  *McKay*, 2024 WL 3251349, at *1.  And as a formal matter, the City cannot be held liable for a "conspiracy" under § 1983; the City can only be held liable via *Monell* liability.  McKay's conspiracy claim against the City is dismissed with prejudice.  The court also notes that the City cannot be held vicarious liable under *Monell* for the alleged, improper acts of Garr, Lockett, Little, Cabone, and Helmhold.  *See Bohanon v. City of Indianapolis*, 46 F.4th 669, 672 (7th Cir. 2022).  The question is whether McKay has plausibly alleged the existence of a City "policy or custom" that caused her a constitutional injury.  *Id.*  Judge Maldonado previously dismissed McKay's *Monell* claim because McKay had not made such allegations.  *McKay*, 2024 WL 3251349, at *9.  The court granted leave for McKay to file an amended complaint against the City if she could "provide additional factual allegations in support of her argument that the City engages in a widespread practice of conducting wrongful drug tests . . . ."  *Id.* at *10, *12.

As the court describes above and as the City points out, McKay has failed to do so.  (*See* Mem. at 18–19.)  In her response to the City's motion to dismiss, McKay criticizes the CFD's "Military Chain of Command" system and asserts that the City "refuses to investigate most employment issues involving the decision makers, unless they have a political/discriminatory reason to do so."  (Pl. Resp. at 9–10.)  Such allegations do not identify a policy regarding allegedly

unlawful drug testing and thus do not satisfy the *Monell* requirement that plaintiff allege a policy or practice that is "the direct cause or moving force" behind the constitutional violation. *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (citation omitted). McKay may use evidence of the circumstances surrounding the drug tests in attempting to prove her retaliation claim, but her *Monell* claim against the City as alleged in Count IV must be dismissed.

## VI. Invasion of Privacy/ Intrusion Upon Seclusion (Count VIII)

McKay's final claim is premised on the "intrusion upon seclusion" theory of invasion of privacy. To state such a claim under Illinois law, the plaintiff must allege (1) an unauthorized intrusion or prying into the plaintiff's seclusion; (2) that the intrusion is "highly offensive or objectionable to a reasonable person"; (3) that the matter upon which the intrusion occurs is private; and (4) that the intrusion causes anguish and suffering. *Jacobson v. CBS Broad., Inc.*, 2014 IL App (1st) 132480, ¶ 47, 19 N.E.3d 1165, 1180.

Judge Maldonado previously dismissed McKay's intrusion-upon-seclusion claim because it appeared to be based only on the alleged, procedurally improper drug test that McKay was subjected to, and based on McKay's Second Amended Complaint, it was *clear* that the drug test had occurred more than a year prior to her filing this lawsuit and was thus time-barred under the Illinois Tort Immunity Act, as the Defendants argued. *McKay*, 2024 WL 3251349, at *13.

The City does not challenge the merits of McKay's intrusion-upon-seclusion claim but insists, again, that the claim is time-barred, based on the City's understanding that the claim remains based solely on the initial, improper drug test. (*See* Mem. at 2; Reply at 11.) McKay now asserts, however, that during the pendency of this litigation (though it is not clear exactly when), she has been subjected, in addition, to a "drug and alcohol exam, a personality profile exam, and a mental fitness exam." (Pl. Resp. at 10.) She also alleges that she has been "scheduled for more physical testing" and is "being required to submit ALL her medical history since birth" in order to keep her job, which includes disclosing details such as when she began

14

menstruating, and the methods of family planning she has utilized. (*Id.*) This information, McKay argues, "has nothing [whatsoever] to do with public safety," and she asserts that her male colleagues are not made to account for their medical history in similar fashion or level of detail; instead, she posits, the information is being asked of her to humiliated and degrade her, in retribution for prior complaints. (*Id.* at 10–11.)

Given that the alleged additional testing and disclosures have been imposed during the course of the litigation, it is no longer clear to the court that the intrusion upon seclusion claim is time-barred. Consequently, McKay's claim cannot be dismissed on that basis at the pleading stage. And while the court is skeptical that McKay could succeed on this claim solely on the basis of being made to submit to physical exams, personality tests, and drug and alcohol screenings by her employer, that is not all she has alleged. Being made to disclose intimate and deeply personal details about her history of menstruation and family planning, where such disclosures were not genuinely authorized or justified, could plausibly create liability. *See Busse v. Motorola, Inc.*, 351 Ill. App. 3d 67, 72, 813 N.E.2d 1013, 1018 (1st Dist. 2004) (citation omitted) (employees' "family problems, romantic interests, sex lives, [and] health problems" are "private" matters for the purposes of intrusion upon seclusion). McKay's intrusion upon seclusion claim may proceed.

## CONCLUSION

For the foregoing reasons, Count I (hostile work environment) may proceed, along with Counts II and VI (retaliation), Count III (failure to promote), Count VII (IIED), and Count VIII (intrusion upon seclusion). The court dismisses Counts IV (*Monell*) and V (§ 1983 conspiracy) with prejudice. The City can only be liable under § 1983 via *Monell*, and no facts alleged could state a claim against the City via the conspiracy pathway. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519–20 (7th Cir. 2015) (court may decline to grant leave to amend claims where it "is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted") (citations omitted). And while McKay may argue that she can allege a *Monell* claim against the City, the court declines to again allow leave

to amend, despite McKay's *pro se* status. While district courts should freely give leave to amend "where justice so requires," they may deny leave to amend in the case of, among others, "undue delay" and/or "repeated failure to cure deficiencies by amendments previously allowed." FED. R. CIV. P. 15(a)(2); *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010). This litigation is already more than four years old, and many of the events underlying the case are even older; meanwhile, McKay has already had three chances to amend her complaint and has stated several other viable claims. In the court's view, the interests of justice will be best served by allowing the parties to litigate McKay's viable claims without further delay.

ENTER:

Date: August 20, 2025

REBECCA R. PALLMEYER
United States District Judge